IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARY A. CRAIG-BRITTON                                                                PLAINTIFF

        v.                              Civil No. 10-3048

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                       DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.**      **Factual and Procedural Background**

Plaintiff, Mary A. Craig-Britton, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for supplemental security income benefits ("SSI"), pursuant to § 1602 of Title XVI of the Social Security Act, 42 U.S.C. § 1381a ("the Act").

Plaintiff protectively filed her SSI application on June 8, 2005, alleging a disability onset date of January 1, 1993, due to neck, back, hip, knee, and shoulder pain, degenerative disc disease, osteoarthritis, bursitis, carpal tunnel syndrome, depression, borderline personality disorder, attention deficit disorder, and asthma. Tr. 10, 55-56, 63, 112. At the time Plaintiff's SSI application was filed, she was forty six years of age with an eleventh grade special education and a GED. Tr. 34, 60, 120, 508, 512. She has past relevant work as a certified nursing assistant ("CNA"), seamstress, and security guard. Tr. 56-57, 65-72, 108, 111, 121, 512, 515-516.

Plaintiff's SSI application was denied at the initial and reconsideration levels. Tr. 35-38, 40-41. At Plaintiff's request, an administrative hearing was held on March 27, 2008. Tr. 505-531. Plaintiff was present at this hearing and represented by counsel. Tr. 505-531. The Administrative

Law Judge ("ALJ") rendered an unfavorable decision on June 2, 2008, finding that Plaintiff was not disabled within the meaning of the Act. Tr. 7-18. Subsequently, the Appeals Council denied Plaintiff's Request for Review on March 25, 2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 3-5. Plaintiff now seeks judicial review of that decision.

## II.    Medical History

Plaintiff has a history of low back pain, joint pain in her shoulders, knees, and hips, and leg pain/numbness. Tr. 327-400. In 1991, Plaintiff underwent a left knee arthroscopy. Tr. 352. In 1993, Plaintiff injured her low back while trying to lift a patient at work. Tr. 211-212, 327-400. She was treated conservatively with physical therapy and was prescribed a transcutaneous electrical nerve stimulation ("TENS") unit. Tr. 207-212. In 1997, due to disc bulging and irritative radiculopathy, Plaintiff underwent a decompression laminectomy of L3-4 and L4-5, with disc removal at L3-4. Tr. 340, 360-400, 411-436. In July 1999, Plaintiff fractured her fifth metacarpal on the right hand, but surgical intervention was unnecessary. Tr. 228-234.

Plaintiff was treated by David Mack, M.D., for her persistent back and joint pain. Tr. 154-158, 326-400. Dr. Mack assessed Plaintiff with degenerative disc disease and cervical radiculopathy. Tr. 345. In March 2002, Plaintiff underwent an MRI of her lumbar spine, which revealed mild bulging of the disc annulus at L3-4, a left hemilaminotomy and mild bulging of the disc at L4-5, and a left hemilaminotomy at L5-S1. Tr. 287-294. However, there was no evidence of malalignment, herniation, stenosis, foraminal narrowing, or signal abnormalities, and electromyography ("EMG") and nerve conduction studies were normal. Tr. 287-294, 341-344.

In February 2003, Plaintiff had an MRI of her left knee due to pain related to a fall that occurred several months earlier. Tr. 152-153. Results revealed a Baker cyst, joint effusion, grade

II signal abnormalities within the anterior horn of the lateral meniscus and the posterior horn of the medial meniscus, and a lateral superior fragment of the patella, possibly a healing fracture fragment or a bipartite patella. Tr. 153. However, no torn cartilage was seen. Tr. 158. On March 18, 2003, Dr. Mack noted grating with medial joint line soreness, but good range of motion with no effusion. Tr. 157. He treated Plaintiff with pain injections in both knees and gave her a prescription for Darvocet. Tr. 155-157, 331. X-rays revealed early degenerative changes of the knees bilaterally. Tr. 157. In April 2003, Dr. Mack recommended continuing treatment with pain injections, which had provided some relief. Tr. 154-155. At this time, he did not believe Plaintiff was a candidate for a total knee replacement. Tr. 154.

On June 1, 2005, Plaintiff was admitted to Abraham Lincoln Memorial Hospital with complaints of chest pain and shortness of breath. Tr. 160-162, 217-227. Plaintiff admittedly smoked one pack of cigarettes per day. Tr. 223. Upon examination, Plaintiff's lung sounds had course wheezes throughout, but she exhibited no pain upon palpation. Tr. 223. X-rays of her chest revealed evidence of diffuse interstitial prominence throughout both lung fields with a focal alveolar density in the retrosternal region, likely chronic in nature. Tr. 159. Plaintiff was assessed with acute bronchitis, given antibiotics and an Albuterol inhaler, and advised to stop smoking. Tr. 160-162.

On September 16, 2005, Plaintiff underwent a general physical examination with K. Simon Abraham, M.D. Tr. 170-184. Plaintiff reported pain in her low back, hips, knees, and shoulders, asthma, possible cardiac pulmonary obstructive disease ("COPD"), and depression. Tr. 170. At the time, Plaintiff was taking Celebrex, Zoloft, and Darvocet. Tr. 170.

Upon examination, Plaintiff had normal breath sounds, with some hyper-resonance. Tr. 172. She had full range of motion in her cervical spine, elbows, wrists, hands, hips, knees, and ankles, but

range of motion was limited to 15 degrees in her lumbar spine and 90 degrees in her shoulders. Tr. 172. Plaintiff's reflexes were intact, and she exhibited no signs of muscle weakness or atrophy, sensory abnormalities, or abnormalities in gait and coordination. Tr. 173. She was able to hold a pen and write, grip, touch her fingertips to her palm, oppose her thumb to her fingers, stand and walk without assistance devices, but she could not pick up a coin, walk on her heels and toes, and squat and arise from a squatting position. Tr. 173. Plaintiff's pulses were normal and there were no signs of edema. Tr. 174. A spirometry test suggested obstructive disorder. Tr. 176-184. Dr. Abraham assessed Plaintiff with joint pain, depression, and a history of asthma. Tr. 175. However, he noted he had "the distinct impression that the [patient] was malingering during the exam." Tr. 175. Specifically, Dr. Abraham stated that Plaintiff refused to stoop beyond 15 degrees. Tr. 175. He opined that he could not verify the validity of his findings. Tr. 175.

On October 5, 2005, Kathryn M. Gale, M.D., an agency specialist, completed a Psychiatric Review Technique, in which she found that Plaintiff's depression did not meet or equal Listing 12.04 (affective disorders). Tr. 185-198. Dr Gale found that Plaintiff had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. Tr. 195. In a Mental Residual Functional Capacity ("RFC") Assessment, Dr. Gale found that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and interact appropriately with the general public. Tr. 202-205. She found no other significant limitations. Tr.

202-205. Based on her findings, Dr. Gale determined that Plaintiff could perform work where interpersonal contact is incidental to work performed, e.g. assembly work, where complexity of tasks is learned and performed by rote, with few variables, little judgment, and where the supervision required is simple, direct, and concrete. Tr. 204.

On October 7, 2005, William F. Payne, M.D., an agency specialist, reviewed Plaintiff's medical records and determined that her physical impairments were non-severe. Tr. 199-201.

Plaintiff was treated by Larry Jennings, D.O., from 2005-2007. Tr. 163-169, 304-316. In September 2005, Plaintiff complained of left lower leg numbness and joint pain. Tr. 304. She was prescribed Celebrex, Zoloft, and Darvocet. Tr. 304. In October 2005, Plaintiff complained of chest pain. Tr. 164. Dr. Jennings noted that she had not started her medications and compliance had been poor. Tr. 164. He recommended a stress test and prescribed Lopressor and baby aspirin for her elevated blood pressure. Tr. 164. Results of Plaintiff's stress test were negative. Tr. 167-169. As of November 2005, Plaintiff's blood pressure was "doing well." Tr. 311. On December 19, 2005, Plaintiff was seen for a fractured right fifth toe that showed signs of healing. Tr. 163, 166. Dr. Jennings noted high blood pressure and increased Plaintiff's dosage of Lopressor. Tr. 163. He also noted that Plaintiff was considered high risk due to depression and suicidal ideation. Tr. 163. He arranged for Plaintiff to receive treatment at Ozark Counseling Services ("OCS"), although the record does not reflect that Plaintiff received treatment at OCS during this time. Tr. 163.

On March 27, 2006, Plaintiff reported that she had stopped all of her medication, including her blood pressure medication, and was not cooperative during range of motion testing. Tr. 314. Dr. Jennings noted that he could not release Plaintiff with any work restrictions, as the "exam was complicated and difficult to assess." Tr. 314. Dr. Jennings recommended an assessment by a

specialist for rehabilitative potential, but Plaintiff was not agreeable to his recommendations. Tr. 314.

On August 7, 2007, Plaintiff presented to Stone County Medical Center with complaints of chronic low back and left hip pain with radiation down the left leg. Tr. 296-302. Upon examination, Plaintiff had decreased range of motion and muscle spasms in her lower back. Tr. 300. Lumbar spine x-rays revealed no apparent abnormalities. Tr. 301. Similarly, left hip x-rays showed no indication of fracture or dislocation. Tr. 302. Plaintiff was assessed with exacerbation of chronic low back pain and discharged with prescriptions for Flexeril and Vicodin. Tr. 297.

On August 9, 2007, Plaintiff presented to Lilly Roberts, APN, with complaints of low back pain with radiation to her left leg and some numbness and tingling in the left foot. Tr. 315-316. Upon examination, Plaintiff had palpable tenderness midline in the lower lumbar region and straight leg raises were positive. Tr. 315. Plaintiff was prescribed Ultracet for pain and given a referral to an orthopedic specialist. Tr. 315-316. However, there is no indication that Plaintiff followed through with her referral.

On November 8, 2007, Plaintiff saw Stephen R. Harris, Ph.D., for a consultative psychological evaluation. Tr. 317-322. Plaintiff complained of chronic pain, migraines, poor memory, and depression. Tr. 317-318. Plaintiff reported taking Zoloft in the past, but could not currently afford medication. Tr. 318. She stated she was the youngest of eight children and had no family history of mental problems, although her father was an alcoholic. Tr. 318. She had been married twice and had one adult child. Tr. 318. She denied any drug use, but reported smoking one and a half packs of cigarettes a day and drinking alcohol to help her pain. Tr. 318, 320. Her hobbies included watching game shows and reading mystery novels. Tr. 319.

Plaintiff was alert and oriented times four. Tr. 319. She was pleasant and her mood was appropriate. Tr. 319. Thought processes were spontaneous and her mental activity varied from well-organized to vague. Tr. 319. Plaintiff reported suspicion of others, fatigue, and low self-esteem. Tr. 319. She denied homicidal ideation, but admitted to passive suicidal thoughts. Tr. 319. She admitted seeing things out of the corners of her eyes and hearing voices. Tr. 319. Dr. Harris estimated Plaintiff's intelligence to be within the borderline range. Tr. 320. He noted that alcohol abuse could be a problem, as Plaintiff was using alcohol as a substitute for medication. Tr. 320. Dr. Harris assessed Plaintiff with alcohol abuse and borderline personality disorder, and estimated her global assessment of functioning ("GAF") score at 55. Tr. 321. He noted some difficulty in the areas of social interaction and performing work-like tasks, but found no noticeable troubles in the areas of personal needs, concentration, or persistence. Tr. 321. He opined that Plaintiff could perform work-like tasks in an acceptable time frame if she was not drinking or seeking assistance from others. Tr. 321.

In a Medical Source Statement (Mental), Dr. Harris found mild to moderate difficulties in Plaintiff's ability to make judgments on work-related decisions, interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. Tr. 323-325. He found mild difficulties in Plaintiff's ability to make judgments on simple work-related decisions and to understand, remember, and carry out complex instructions. Tr. 323. Dr. Harris noted that Plaintiff had alcohol abuse tendencies and her social interactions and ability to follow directions might improve if she stopped drinking. Tr. 324.

In January and March 2008, Plaintiff was treated at Ozark Counseling Services for depression. Tr. 481-490. Plaintiff reported symptoms of depressed mood, social isolation, loss of

appetite, low energy, and sadness over the recent deaths of her father and older sister. Tr. 487. She relayed a history of physical and sexual abuse as a child and was currently married to a physically abusive husband. Tr. 482, 487. As a teenager, Plaintiff dropped out of school, but obtained her GED and became a CNA. Tr. 482. She admitted past alcohol abuse and heavy cigarette smoking. Tr. 487. At the time of her appointment, Plaintiff was not taking any medication due to cost concerns. Tr. 481.

Upon examination, Plaintiff's mood was depressed, her judgment was mildly impaired, and her insight was moderately impaired as to her illness. Tr. 483. She had chronically poor focus, concentration, and memory. Tr. 487. She reported auditory hallucinations and passive suicidal ideation. Tr. 482-483, 487. On January 30, 2008, Plaintiff was diagnosed with major depressive disorder, recurrent, moderate, provisional post-traumatic stress disorder, rule out panic disorder. Tr. 490. She was prescribed Zoloft. Tr. 486. On March 6, 2008, Plaintiff was assessed with major depressive disorder, moderate, recurrent, rule out learning disorder not otherwise specified and borderline intellectual functioning. Tr. 484. She was also diagnosed with alcohol and nicotine dependence and alcohol-induced psychotic disorder with hallucinations, and was referred to Alcoholics Anonymous. Tr. 485.

### III.    Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether

evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

### IV.    Discussion

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since June 8, 2005, the application date. Tr. 12. At step two, he found that Plaintiff suffers from mood disorder, back disorder, and chronic bronchitis, which are severe impairments under the Act. Tr. 12. At step three, the ALJ determined that Plaintiff's impairments, considered both singly and in combination, did not meet or medically equal a listed impairment. Tr. 12. At step four, he found that Plaintiff retained the RFC to lift/carry ten pounds frequently, twenty pounds occasionally, and to push/pull within these limitations. Tr. 12-16. He also found that Plaintiff could sit/stand for six hours in an eight-hour workday, occasionally climb ladders, scaffolds, and crawl, and frequently climb stairs and ramps, balance, kneel, crouch, and stoop. Tr. 12-16. Environmentally, the ALJ found that Plaintiff could occasionally tolerate dust, odors, fumes, and pulmonary irritants. Tr. 12. From a mental standpoint, he found that Plaintiff had mild limitations in the ability to make judgments on simple work-related decisions, understand, remember, and carry out complex instructions, and moderate limitations in the ability to make judgments on complex work-related decisions, respond appropriately to usual work situations and routine work changes, and interact appropriately with supervisors, co-workers, and the public. Tr. 12-16.

With these limitations, the ALJ found that Plaintiff could no longer perform any of her past relevant work. Tr. 16. However, with the aid of a vocational expert, he determined that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, including representative occupations such as poultry deboner, of which there are 140,000 jobs nationally and 7,000 locally, hotel/motel maid, of which there are 630,000 jobs nationally and 5,300 locally, and inspectors, of which there are 86,000 jobs nationally and 1,200 locally. Tr. 17, 143-150. Thus, at

step five, the ALJ determined Plaintiff was not under a disability at any time since June 8, 2005, the application date. Tr. 17.

Plaintiff contends that the ALJ erred by:(1) improperly determining her RFC; (2) dismissing her subjective complaints; (3) failing to fully and fairly develop the record; and (4) failing to consider the combined effects of her impairments. *See* Pl.'s Br. 10-19. The remainder of Plaintiff's arguments are either duplicative or without merit and do not warrant further discussion.

A. RFC

Plaintiff asserts that the ALJ improperly determined her RFC. *See* Pl.'s Br. 12-14. We disagree. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be some medical evidence to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

Substantial evidence supports the ALJ's RFC assessment. Most of Plaintiff's medical records are outside the relevant time period.[1] However, Plaintiff's medical history suggests ongoing

---

[1] SSI benefits are not payable for a period prior to the application date. *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989).

difficulty with lumbar and joint pain. A 2002 MRI of Plaintiff's lumbar spine revealed disc bulging at L3-4 and L4-5. Tr. 287-294. However, there was no evidence of malalignment, herniation, stenosis, foraminal narrowing, or signal abnormalities, and EMG and nerve conduction studies were normal. Tr. 287-294, 341-344. Plaintiff was prescribed pain medication, non-steroidal anti-inflammatories, and muscle relaxers to alleviate her low back pain, but she did not remain compliant with these medications. Tr. 164, 170, 297, 304, 314-316. *See Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010) (claimant was noncompliant with her doctor's instructions to take her medications, follow her diet, and abstain from drugs and alcohol).

In 2003, Plaintiff was treated for knee pain. Tr. 157. An MRI revealed a Baker cyst, joint effusion, grade II signal abnormalities within the anterior horn of the lateral meniscus and the posterior horn of the medial meniscus, and a lateral superior fragment of the patella, possibly a healing fracture fragment or a bipartite patella. Tr. 153. However, no torn cartilage was seen. Tr. 158. On March 18, 2003, Dr. Mack noted grating with medial joint line soreness, but good range of motion with no effusion. Tr. 157. Plaintiff was given pain injections in both knees, which provided some relief. Tr. 154; *see Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (an impairment that can be controlled by treatment or medication is not considered disabling). Dr. Mack opined that Plaintiff was not a candidate for total knee replacement. Tr. 154.

Plaintiff's remaining allegations of joint pain are not fully supported by the record. Despite complaints of hip pain, x-rays dated August 7, 2007, were normal, with no indication of fracture or dislocation. Tr. 302. Plaintiff's alleged hand, wrist, and leg pain are also unsubstantiated. In September 2005, Plaintiff underwent a physical examination with Dr. Abraham. Tr. 170-184. She had full range of motion in her cervical spine, elbows, wrists, hands, hips, knees, and ankles, but

range of motion was limited to 15 degrees in her lumbar spine and 90 degrees in her shoulders. Tr. 172. Plaintiff's reflexes were intact, and she exhibited no signs of muscle weakness or atrophy, sensory abnormalities, or abnormalities in gait and coordination. Tr. 173. She was able to hold a pen and write, grip, touch her fingertips to her palm, oppose her thumb to her fingers, stand and walk without assistance devices, but could not pick up a coin, walk on her heels and toes, and squat and arise from a squatting position. Tr. 173. Dr. Abraham assessed Plaintiff with joint pain, depression, and a history of asthma. Tr. 175. However, he had "the distinct impression that the [patient] was malingering during the exam," as Plaintiff was uncooperative with stooping. Tr. 175.

With regard to Plaintiff's asthma and chronic bronchitis, chest x-rays from June 2005 revealed evidence of diffuse interstitial prominence throughout both lung fields, likely chronic in nature. Tr. 159. She was prescribed antibiotics, an Albuterol inhaler, and encouraged to quit smoking. Tr. 160-162. Although Plaintiff was repeatedly admonished to quit smoking, she continued to do so against the advice of her physicians. Tr. 160-162, 525; *see Mouser v. Astrue*, 545 F.3d 634, 638 (8th Cir. 2008) (claimant continued to smoke despite his pulmonary impairment).

Although Plaintiff undoubtedly experiences some degree of pain, none of her medical records support her contention that she is totally disabled. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Significantly, no physician, treating or otherwise, opined that Plaintiff is unable to work. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (none of the claimant's treating physicians opined that she was unable to work). In fact, despite Plaintiff's subjective statement that she was completely disabled, Dr. Jennings, a treating physician, refused to release her with any work restrictions. Tr. 314. For these reasons, we find that substantial evidence supports the ALJ's RFC

determination.

Plaintiff does not specifically address her mental RFC assessment. Nevertheless, we conclude that the ALJ's mental RFC findings are supported by the substantial evidence. Although Plaintiff experiences chronic depression, she sought little treatment during the relevant time period. *Page v. Astrue*, 484 F.3d 1040, 1044 (8th Cir. 2007) (claimant's failure to seek mental health treatment was indicative of the relative seriousness of her depression). Additionally, she testified that her depression improved with the use of Zoloft. Tr. 521-523; *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (an impairment is not considered disabling if it is adequately controlled with medication). Thus, substantial evidence supports the ALJ's mental RFC assessment.

### B. Subjective Complaints

Plaintiff contends that the ALJ improperly dismissed her subjective complaints. *See* Pl.'s Br. 14-17. We disagree. When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (quoting Goff *v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.*

Contrary to Plaintiff's assertion, the ALJ properly cited the *Polaski* factors and dismissed her subjective complaints for legally valid reasons. Tr. 13-16. Plaintiff has a history of noncompliance

with recommended treatment and medication. *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (claimant did not show good cause for failing to follow prescribed course of treatment). In October 2005, Dr. Jennings noted that Plaintiff had not started her prescribed medications and compliance had been poor. Tr. 164. On March 27, 2006, Plaintiff had reportedly stopped all her medication and was not cooperative with range of motion testing. Tr. 163. When Dr. Jennings refused to release Plaintiff with any work restrictions and recommended an assessment by a specialist for rehabilitative potential, she refused. Tr. 314. Additionally, on August 9, 2007, Lilly Roberts, APN, referred Plaintiff to an orthopedic specialist. Tr. 315-316. However, there is no indication that she ever followed through with her appointment. Plaintiff's noncompliance with prescribed treatment is simply inconsistent with her allegations of disabling pain. *See Raney v. Barnhart*, 396 F.3d 1007, 1011 (8th Cir. 2005).

  Plaintiff argues she cannot afford the cost of treatment or medication. Tr. 517. However, there is no evidence that she sought treatment at a low-cost clinic or charitable institution, nor has she presented evidence that she sought treatment and was refused. (Tr. 16, 242). *See Clark v. Shalala*, 28 F.3d 828, 831 n. 4 (8th Cir. 1994) (ALJ properly discounted claimant's subjective complaints when he failed to provide evidence of refusal of services due to lack of financial resources). Moreover, although Plaintiff claims she cannot afford medical care, she continues to finance her smoking habit. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (although claimant stated he could not afford prescription medication, he continued to smoke three packs of cigarettes a day). As such, her argument is not persuasive.

  Finally, potential malingering casts suspicion on Plaintiff's motivation and credibility. *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006). Dr. Abraham suspected malingering during his

consultative physical examination, noting that Plaintiff refused to stoop below 15 degrees. Tr. 175. Additionally, on March 27, 2006, Dr. Jennings noted that Plaintiff was not cooperative during range of motion testing and her "exam was complicated and difficult to assess." Tr. 314. A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792). Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. Accordingly, substantial evidence supports the ALJ's credibility findings.

C. Development of the Record

Plaintiff contends that the ALJ failed to fully and fairly develop the record by not ordering a consultative orthopedic and/or neurological examination. *See* Pl.'s Br. 10-12. We disagree. The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

In this instance, the ALJ properly developed the record. Plaintiff argues the ALJ should have sent Plaintiff out for further evaluation, or, alternatively, sought RFC evaluations from her treating physicians. There is no such requirement under the regulations. The transcript contains over 300 pages of medical records dating from 1987 until 2008. There are extensive records from treating physicians as well as examinations from consulting physicians. The ALJ had sufficient evidence to rely on in making his RFC determination. *See Tellez v. Barnhart*, 403 F.3d 953, 956-57 (8th Cir. 2005) (rejecting argument that ALJ failed to fully and fairly develop the record where there was no indication that the ALJ was unable to make RFC assessment). Moreover, the ALJ only has a duty to re-contact a treating physician for clarification or if a crucial issue is undeveloped. *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010). Neither of these circumstances is present in the case at bar. Accordingly, we find that the ALJ satisfied his duty to fully develop the record.

    D. Combined Impairments

In her final argument, Plaintiff contends that the ALJ failed to properly consider all of her impairments, both singly and in combination. *See* Pl.'s Br. 17. In determining whether an individual's physical or mental impairments render him disabled, the ALJ must consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be deemed severe. 42 U.S.C. 423(d)(2)(B).

The court finds no merit in Plaintiff's conclusory argument. The ALJ cited to the proper authority, referenced Plaintiff's "impairment or combination of impairments," and thoroughly discussed Plaintiff's medical history. Tr. 11-16; *see Harris v. Apfel*, 198 F.3d 250 (8th Cir. 1999) (citing *Hajek v. Shalala*, 30 F.3d 89, 92 (8th Cir. 1994) ("claimant's conclusory statement that ALJ failed to consider combined effects of impairments was unfounded where ALJ noted each impairment and concluded that impairments alone or in combination were not of listing level")).

Moreover, Plaintiff offers no specific evidence to bolster her allegation, and merely reiterates prior arguments. As such, Plaintiff's argument is unpersuasive. Accordingly, substantial evidence supports the ALJ's determination regarding Plaintiff's combined impairments.

### V.     Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's decision, and recommends that the decision be affirmed, and Plaintiff's case be dismissed with prejudice. **The parties have <u>fourteen</u> days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1),** *amended by* **Pub. L. 111-16, §§ 6(1), 7, 123 Stat. 1607, 1608-09 (2009). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

ENTERED this 12th day of May 2011.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE